OPINION OF THE COURT
Irving M. Kramer, J.
This case presents several interesting and unusual questions for which there does not appear to be any specific guidelines or procedures in the Penal Law or CPL to aid in their resolution. This memorandum is being written not only to explain the court’s determination of these issues, but also, hopefully, that it will receive the attention of the Legislature to enable it to correct what this court perceives to be a deficiency in the statutory scheme with respect to CPL 200.60 (special information).
The questions presented and considered by this court are set forth in the order of their treatment in this memorandum:
(1) Is a special information, provided for in CPL 200.60, amendable?
(2) Can a defendant controvert a prior conviction set forth in a special information even though no procedure for doing so is set forth in CPL 200.60?
(3) If the defendant is to be permitted to controvert a prior conviction contained in a special information, what is the proper vehicle to bring on such attack?
(4) Which party shall carry the burden of proof — the defendant or the People?
(5) When should such a motion be made to be deemed timely?
FACTUAL BACKGROUND
The defendant, an indigent street person with a history of psychiatric problems, was indicted for the crimes of *792 attempted assault in the second degree and two counts of criminal possession of a weapon in the third degree. The indictment charged the two weapon counts as felonies rather than misdemeanors because of defendant’s prior conviction for a misdemeanor.
In conformity with CPL 200.60, and after the trial was commenced (and in this case after the jury was selected and sworn), the defendant was arraigned on a special information alleging the defendant’s conviction for a prior crime on January 5, 1980. The defendant denied a conviction on that date. The District Attorney, after reviewing his file, moved to amend the special information to read November 5,1980 stating the incorrect date was the result of typographical error. The motion to amend the special information was granted. The defendant thereupon admitted his conviction on November 5,1980 but claimed it was unconstitutionally obtained (inadequate plea allocution) and consequently could not be the basis for the elevation of the two counts of criminal possession in the fourth degree (a misdemeanor) to criminal possession in the third degree (a felony).
This court directed defendant’s counsel to immediately prepare and serve an order to show cause why the relief sought should not be granted. After service and argument of the order to show cause, this court granted a hearing on the question of the constitutionality of the prior conviction. Upon conclusion of the hearing this court found that the prior conviction had been unconstitutionally obtained holding that it would charge the two criminal possession counts as misdemeanors and not as felonies. The court charged the jury accordingly and the defendant was convicted of attempted assault in the second degree and two counts of criminal possession in the fourth degree.
AMENDING THE SPECIAL INFORMATION
Neither the CPL nor the Penal Law authorize the amendment of a special information although there are specific provisions for amending an indictment (CPL 200.70) and a bill of particulars (CPL 200.90).
In People v Giuliano (52 AD2d 240, 243), the court determined a “special information is * * * in the nature of *793 a bill of particulars which tells the defendant which particular conviction the District Attorney intends to rely on to sustain the felony indictment.” Therefore, to this court, logic and reason dictated that if a special information is in the nature of a bill of particulars which can be amended, then this court had the inherent power to permit the amendment of a special information after first inquiring into and confirming that the Grand Jury did indeed indict the defendant for a felony by reason of the conviction of November 5, 1980 and not January 5, 1980 as originally alleged in the special information (see People v Heaton, 59 AD2d 704). Examination of the Grand Jury minutes corroborated that the Grand Jury did base the indictment on the conviction of November 5,1980 and therefore the court permitted the special information to be amended although not sanctioned by statute.
A posteriori, it seemed to this court that if the Legislature considered it sufficiently important to make special provisions for amending an indictment or a bill of particulars, that it would be equally efficacious to similarly provide for the amending of a special information.
CHALLENGE TO THE UNCONSTITUTIONALITY OF THE PRIOR CONVICTION
This presented the court with the most troublesome aspects of this case.
The defendant was charged, in addition to the attempted assault in the second degree, with two counts of violating subdivision (1) of section 265.02 of the Penal Law, which reads as follows:
“§ 265.02 Criminal possession of a weapon in the third degree
“A person is guilty of criminal possession of a weapon in the third degree when:
“(1) He commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one, two, three or five of section 265.01, and has been previously convicted of any crime”.
Subdivisions (1) through (3) and (5) of section 265.01 of the Penal Law set forth the various weapons, the possession of which, or certain weapons, which when possessed *794 under certain circumstances, constitute the violation of criminal possession of a weapon and a class A misdemeanor. However, section 265.02 of the Penal Law provides that where the defendant has been convicted of a prior crime such prior conviction then forms the predicate for elevating this crime from a misdemeanor level to felony-status. In referring to a previous conviction of a crime as a basis for elevating the possession of a weapon charge from a misdemeanor level to a felony level, section 265.02 of the Penal Law does not specify whether the predicate crime must be one constitutionally obtained. Nor does the CPL provide for a challenge to the special information which alleges the prior conviction to be relied on to elevate the current misdemeanor crime to felony status.
The defendant here was accused of possessing two knives during the alleged attempted assault. Because of his prior conviction of November 5, 1980, he was charged with two counts of criminal possession of a weapon as a felony, in addition to the felony count of attempted assault in the second degree. Thus, this court was placed in the position of having to determine whether an attack on the constitutionality of a defendant’s prior conviction was permissible although there is no statutory authority therefor, and, if permissible, the method to be employed in making such challenge.
In People v Cornish (104 Misc 2d 72, 75) a defendant, charged with criminal possession of a weapon under subdivision (1) of section 265.02 of the Penal Law, moved to dismiss the indictment on the ground that the statute was void because it did not provide an opportunity to challenge the constitutionality of the previous conviction. The challenge in Cornish was directed solely to the constitutionality of the statute itself and the court therefore did not concern itself with whether the prior conviction would be subject to attack. It ruled the statute to be constitutional relying heavily on the decision of the Supreme Court of the United States in Lewis v United States (445 US 55 [which will be discussed in greater detail later on in this decision]).
In two subsequent New York cases, People v Dorn (105 Misc 2d 244) and People v Sirianni (109 Misc 2d 781) the *795 defendants were each charged with driving while intoxicated as a felony based on prior intoxication convictions. In each case, the defendants moved to suppress the introduction into evidence of their prior convictions. Without discussing (1) whether an attack on the constitutionality of a prior conviction was permissible under the statute, or (2) • the propriety of a motion to suppress as the vehicle to mount such challenge, both courts examined the constitutionality of the prior convictions and granted the motions to suppress (cf. People v Bourdrieau, 107 Misc 2d 3 [where under similar circumstances the court denied, without prejudice to renewal, a motion to dismiss the indictment because of the insufficiency of the factual allegations in the moving papers]). The common thread in these three cases, aside from the similarity of the fact patterns, is the heavy reliance by the respective courts on a decision of the Supreme Court of the United States in Baldosar v Illinois (446 US 222) approximately two months after the Supreme Court’s decision in Lewis v United States (445 US 55, supra).
A comparison of Lewis v United States (supra) with Baldosar v Illinois (supra) becomes necessary, particularly in light of the observation made by Mr. Justice Powell in his dissenting opinion in Baldosar v Illinois (supra, p 234, n 3 [the only reference by the Baldosar court to the Lewis decision]) — “Today’s decision is all the more puzzling in view of the Court’s recent ruling in Lewis v. United States, 445 U. S. 55 (1980) * * * The conflict between the two holdings could scarcely be more violent.” It must also be noted that the court in People v Cornish (104 Misc 2d 72, supra) which was decided one day after the decision in Baldosar, could not have had the benefit of that decision.*
In Lewis v United States (445 US 55, supra), the defendant Lewis was convicted of violating section 1202 (subd [a], par [1]) of the Appendix to title 18 of the United States Code which, in essence, prohibits the possession of a firearm by any person previously convicted of a felony in a Federal or State court. Shortly before his trial, defendant informed the trial court that the 1961 Florida conviction, *796 which the prosecution intended to use as the predicate for the crime before the court, had been unconstitutionally obtained in violation of his Sixth and Fourteenth Amendments rights (right to counsel). The trial court rejected his claim ruling the constitutionality of the conviction was immaterial. The decision was affirmed by a divided United States Court of Appeals (4th Circuit) holding that the conviction was not subject to collateral attack regardless of its possible constitutional infirmity. The Supreme Court, in a 6 to 3 decision, affirmed, holding that the statute (US Code, tit 18, Appendix, § 1202, subd [a], par [1]) prohibited the possession of a firearm by a convicted felon wjiether or not the predicate conviction was constitutionally obtained, stating (pp 60-61), “The statutory language is sweeping, and its plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action, such as a qualifying pardon”, and (p 67) the “[e]nforcement of that essentially civil disability through a criminal sanction does not ‘support guilt or enhance punishment’ ”. (Emphasis supplied.)
Two months later, the Supreme Court decided Baldasar v Illinois (446 US 222, supra), which appears to be contrary to Lewis (supra). What is most strange, is the apparent lack of reference to Lewis in its decision except for the footnote comment of Justice Powell referred to above.
In Baldasar (supra), an indigent defendant was convicted in May, 1975, of a misdemeanor theft under an Illinois statute. Shortly thereafter, in November of 1975, he was again charged with a petty theft. Under the Illinois statute since he had been previously convicted of theft, the defendant was charged with a felony rather than a misdemeanor. At his trial, evidence of the prior conviction was introduced and defense counsel objected arguing, unsuccessfully, that the prior conviction was unconstitutionally obtained (lack of counsel). The Illinois Appellate Court affirmed and certiorari was granted by the United States Supreme Court. In a 5 to 4 opinion the court determined that “[s]olely because of the previous conviction the second offense was transformed from a misdemeanor into a felony, with all the serious collateral consequences that a felony *797 conviction entails” and “if the State proves a prior conviction for the same offense a completely different range of sentencing options, including a substantially longer term of imprisonment, becomes available” (Baldasar v Illinois, 446 US 222, 227, supra). The court went on to hold (p 228) that an unconstitutionally obtained “conviction which is invalid for purposes of imposing a sentence of imprisonment for the offense itself [referring to the predicate conviction] remains invalid for purposes of increasing a term of imprisonment for a subsequent conviction under a repeat-offender statute.”
It would appear therefore that the nuance that distinguishes the two cases is whether the statute to be considered is one punishing criminally a civil disability (Lewis decision) or is one that enhances punishment (Baldasar decision).
An analysis of subdivision (1) of section 265.02 of the Penal Law clearly indicates this statute to be an enhancement of punishment law. If one follows the rationale of Lewis v United States (supra) and Baldasar v Illinois (supra) it is clear that section 265.01 of the Penal Law creates the disability or interdiction against possession of a weapon, and subdivision (1) of section 265.02 of the Penal Law enhances the punishment since it contains the same elements of section 265.01 of the Penal Law plus the additional elements of a “prior conviction” which elevates the misdemeanor value of the crime to a felony level with a consequent increase in punishment.
Once this court determined that subdivision (1) of section 265.02 of the Penal Law was an enhancement of punishment statute, it logically followed that it could not permit, under the holding of Baldasar (supra) and other authorities (see Burgett v Texas, 389 US 109; United States ex rel. Savini v Jackson, 250 F2d 349; Matter of Bojinoff v People, 299 NY 145), the prosecution to rely on an unconstitutionally obtained predicate conviction and felt compelled to permit a challenge to the constitutionality of the defendant’s prior conviction.
NATURE AND MECHANISM FOR CHALLENGE
Having concluded that a challenge to the predicate conviction on constitutional grounds must be permitted, this *798 court next determined the nature and mechanism for such a challenge.
In People v Dorn (105 Misc 2d 244, supra), and People v Sirianni (109 Misc 2d 781, supra), the vehicle employed was a motion to suppress evidence.
From a reading of CPL 710.20, which governs motions to suppress evidence, it was evident that the evidence in this case (the prior conviction) does not fall into any of the enumerated categories set forth in that statute. Neither the special information nor the certificate of conviction could be submitted to the jury since the defendant admitted the conviction of November 5, 1980 (see CPL 200.60, subd 3, par [a]). Nor is the actual conviction the type of evidence contemplated by CPL 710.20 since the certificate of conviction is not physical evidence seized from the person of the defendant. Therefore, to this court, CPL 710.20 was not the appropriate method of challenge.
Would a challenge on the basis of CPL 60.45 (to suppress a confession, admission or statement) be appropriate? This court felt this section to be equally inappropriate since it is the conviction itself which is sought to be suppressed and not the admission or statements made at the time the plea was taken with respect to the challenged prior conviction.
This court then considered the suitability of a motion to dismiss the indictment (CPL 210.20) utilized in People v Cornish (104 Misc 2d 72, supra) and People v Bourdrieau (107 Misc 2d 3, supra), as a method of challenging the prior convictions and found this to be inappropriate. Under the circumstances of the above-cited cases and the case at bar, even if the motion were to be granted, the indictment could not have been dismissed since the defendant would still be subject to the lesser misdemeanor charges.
The other method left to consider that had been employed in Baldasar (supra) was the making of a simple evidentiary objection at the time of trial. In New York that method of attack could not work simply because under CPL 200.60, the defendant, once he admits the prior conviction, precludes its introduction into evidence and therefore there is no possible way an objection can be made at trial to test its constitutionality.
*799 Having determined that no remedy existed could this court create a remedy?
“[I]t is a vain thing to imagine a right without a remedy; [for] want of right and want of remedy are reciprocal” CAshby v White, 2 Ld Raym 938, 953 [1703, Holt, C. J.]). Obviously, this basic principle of English common law was equally apparent to our Legislature when they enacted our statutes since subdivision 3 of section 2-b of our Judiciary Law reads:
“A court of record has power * * *
“3. to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it.”
In Matter ofAlphonso C. (50 AD2d 97, 99, opp dsmd and remitted to App Div 38 NY2d 923, upon remittitur opp dsmd 52 AD2d 764), the court stated “it is recognized that, even absent statutory authority, the Supreme Court may grant relief if it has general jurisdiction of the subject matter” (citing Judiciary Law, § 2-b).
Clearly, this court had jurisdiction of the subject matter and person of the defendant. Therefore, a priori, it had the power to establish a remedy to enable the defendant to enforce his constitutional guarantees. As was stated in Matter of Bojinoff v People (299 NY 145,149) “Relief must be granted when the proof supports the allegations of irregularity. There is no question that compliance with the mandatory provisions of the statute and observance of the constitutional safeguards surrounding a fair trial is such a basic jurisdictional requirement that when absent, a conviction must be set aside.”
This court, having determined that it had the power to create a remedy, decided that this application most closely resembled a motion to controvert a second felony offender statement (see CPL 400.21) and therefore deemed the application of the defendant to be a motion to controvert the special information and that motion to be the most appropriate mechanism to test the constitutionality of defendant’s prior conviction as alleged in the special information.
*800 BURDEN OF PROOF
Having determined a “motion to controvert” to be the appropriate vehicle to test the constitutionality of the defendant’s prior conviction, the next question to be decided was that of the burden of proof and upon whom it devolved.
Under our law there are several differing burdens of proof to test the constitutionality and admissibility of evidence. In motions to suppress evidence, the People have the burden of going forward to demonstrate the propriety of the police conduct but the ultimate burden of proving unconstitutionality falls upon the defendant (People v Sanders, 79 AD2d 688). In motions to suppress confessions the burden of proving voluntariness is upon the People (People v Huntley, 15 NY2d 72). In motions to controvert second felony offender statements, the burden of proof by statute is placed upon the People (CPL 400.21, subd 7, par [a]).
This court having determined that the application to test the constitutionality of the prior conviction in this case was most analogous to a motion to controvert a second felony offender statement (supra) then logically it follows, a fortiori, that the burden of proof should be upon the People and that the quantum of proof should be proof beyond a reasonable doubt.
Even more persuasive is that “due process of law” requires that the prosecution prove beyond a reasonable doubt every element which constitutes the crime charged against a defendant (see Mullaney v Wilbur, 421 US 684; Matter of Winship, 397 US 358). Here the prior conviction is an element of the offense for the purpose of enhancing punishment by raising the crime from a misdemeanor to a felony. Under such circumstances the burden of establishing the constitutionality of the prior conviction should properly fall upon the People.
TIMELINESS OF THE MOTION
The People argue that the defendant’s application to challenge the constitutionality of his prior conviction should have been made either before commencement of the trial or as a posttrial motion to set aside the verdict *801 pursuant to CPL 330.30. In this court’s opinion neither of these procedures were available or suitable.
The only pretrial motions available to the defendant are those set forth in CPL 255.20 which requires that all such motions be made within 45 days after defendant’s arraign■ment. The subject application made by defendant is not only one that is not enumerated in CPL 255.20, it is also one that is not recognized elsewhere in the statutes. However, assuming, arguendo, the applicability of CPL 255.20, there is still good cause shown why the motion could not be made until after the commencement of trial. CPL 200.60 specifically states that a defendant is to be arraigned on a special information after commencement of trial. Thus if a defendant can only be arraigned after the trial begins and there are no special challenging procedures provided for, either in the specific section or any other section of the statute, any pretrial challenge motion would have been premature. Further, it was very obvious that prior to trial defendant had planned to deny that he was ever convicted of a crime on January 5, 1980, and indeed, he was not. It was only after this court permitted the People to amend the special information, after the trial commenced, to read November 5,1980, that defendant had actual knowledge of the conviction relied upon by the People. The defendant, therefore, had shown good cause why the motion was not made earlier.
Nor would it have been appropriate for this court to have delayed the motion itself until after the trial by converting it to a motion to set aside a verdict pursuant to CPL 330.30. Aside from the fact that this court felt that this section did not contemplate this type of situation, this court felt strongly that in order to properly defend and sum up his case to the jury, the defendant must be aware as to whether the charges would be submitted to the jury as a misdemeanor or a felony. It could very well affect the defendant’s decision as to whether he should take the witness stand in his own defense, which was strongly urged by the defendant in the argument of his application. It certainly would be important for him to know for the purposes of summation. Since the issue goes to the very nature and degree of the crime charged in the indictment, a decision was neces *802 sary before the defendant commenced his defense. This court could not permit a trial on charges that might possibly be based on unconstitutionally obtained evidence or using an unconstitutionally obtained conviction with all its ramifications as previously discussed.
It is obvious that the District Attorney in urging his argument was concerned with the People’s right to appeal. If the court reduced the charge to a misdemeanor and the jury acquits, the People cannot appeal. If the court entertained the motion as one made pursuant to CPL 330.30 to set aside the verdict, then it would be an appealable order and the People’s right to appeal preserved. The court appreciated the People’s position but felt that the fault lay with the statute (CPL 200.60) that requires defendant’s arraignment on a special information after commencement of the trial. Had the statute provided for arraignment on a special information within a specific number of days after its filing and established a challenge procedure within a given time after arraignment, both sides would have been in a better position to prepare and proceed with their respective cases. Unfortunately the statute is deficient in this respect and should be clarified. However the defendant should not be penalized because of such deficiency.
One additional argument advanced by the People should be disposed of at this time. The District Attorney contended that the defendant having had the opportunity to appeal his prior conviction and having failed to do so, waived his right to raise the issue of its constitutionality at this time. This court cannot agree.
On its face the argument is an appealing one and basically sound. However, as previously pointed out Baldasar v Illinois (446 US 222, supra) mandates the testing of an unconstitutionally obtained prior conviction at trial or prior thereto. This court, therefore, having determined that this motion was similar to a motion to controvert a second felony offender statement which does not require a defendant to have appealed his prior conviction, there was no reason to require this defendant to have appealed his prior conviction.
The People are perfectly correct that the defendant could have appealed his prior conviction. Does that mean there *803 can be no other remedy? I think not. The law is not and should not be so rigid and unyielding that it cannot be changed or new remedies cannot be created when needed. It is not a set of immutable rules and formulations that stem from a sacred and unquestionable source but rather a body of rules, if you will, that, results from empirical determinations based on reasoned common sense practically applied and constantly changing to meet new and changing situations. With this in mind and viewing the case at hand from that perspective, it was apparent that the rigid approach of the People would be so unfair as to constitute a denial of due process. We are well aware that misdemeanor convictions, for many reasons, are not often appealed. First, most misdemeanor cases involve the indigent and the uneducated more concerned with survival than stigma and less concerned with pyrrhic victories attained long after the penalties have been assessed and completed; second, the costs of appeal weighed against the result to be achieved are too costly even if affordable; third, even if it can be accomplished, free of cost to the indigent, the legal organizations created for such purposes (such as the Legal Aid Society) cannot accept, because of the sheer volume of work in the misdemeanor courts and the drain on their available funds, every misdemeanor case for appeal; and fourth, who can anticipate at the time of the misdemeanor conviction, whether by plea or trial, that it will affect the defendant in the future, as in this case. Even if it could be anticipated it would still not be feasible because it would require an appeal in every misdemeanor case, a physical and financial impossibility. It is only in hindsight, upon the happening of the subsequent event, that we can appreciate the consequences of the unconstitutionally obtained prior misdemeanor conviction. It is for this reason that the People’s argument, even though valid, cannot be used to deny the defendant an opportunity to test the constitutionality of his prior conviction where its effect can have dire consequences.
THE HEARING
For all the reasons heretofore expressed, this court conducted, after selection of the jury but before the presentation of the People’s case, a hearing to determine the *804 constitutionality of the defendant’s prior conviction of November 5, 1980, alleged in the special information filed pursuant to CPL 200.60 (subd 3).
At the hearing defendant’s former counsel (at plea of Nov. 5, 1980) testified. There was also introduced into evidence a report of a CPL article 730 examination and the minutes taken of defendant’s plea on November 5, 1980.
Former defense counsel testified that he had no recollection of the plea or the circumstances under which the plea was taken.
The psychiatric report introduced into evidence stated as follows: “He understands the nature of the charges against him but he is incapable of proper assistance in his defense. In the first place, his thinking is infected and permeated generally by grandiose delusions. In the second place, he proposes to have Queen Elizabeth of Great Britain brought to court on his behalf. ‘She has to come. I am the king.’ In the third place, his understanding or outlook vis-a-vis the alleged offense is of rigid and unrealistic quality.”
The plea minutes indicate that after a discussion of the CPL article 730 report and confirmation that the defendant was fit to proceed, the following occurred:
“the court: * * * Counselor, does your client wish to plead guilty to assault in the third degree?
“defense counsel: Yes.
“the court: Is that acceptable to the People?
“district attorney: Yes.
“defense counsel: My client waives formal arraignment and requests immediate sentence.
“the defendant: Yes.
“the court: Do you want to say something?
“the defendant: No.
“the court: Sixty days in jail. Advise your client of his right to appeal.”
The court in People v Francis (38 NY2d 150,153) stated: “we are well aware that the acceptance of pleas is an area fraught with difficult problems and that a simplistic reliance on the presence of counsel is not a sufficient solution.”
*805 Although there is no mandatory uniform catechism covering pleas (People v Nixon, 21 NY2d 338, cert den sub nom. Robinson v New York, 393 US 1067), “the mere mouthing of the word ‘guilty’ may not be relied upon to establish all the elements of that crime” (People v Serrano, 15 NY2d 304,308; People v McDougle, 67 AD2d 989; People v Daniels, 75 AD2d 605). Since a plea is a waiver of certain rights, “The plea court is obligated * * * to inquire of the defendant concerning the facts and circumstances of the crime to ascertain whether the plea was voluntarily and knowingly made” (People v Thomas, 74 AD2d 317, 320, affd 53 NY2d 338; cf. People v Fooks and People v Lang, referred to as People v Nixon, 21 NY2d 338, 350; People v Agurto, 70 AD2d 882). The decision to plead guilty must be made by defendant, and the waiver of his rights must appear from defendant, not his counsel (Brookhart v Janis, 384 US 1, 18). While New York has recognized that “Acceptance of defendant’s plea of guilt, through counsel in open court and in defendant’s presence, is proper * * * before accepting a plea of guilty * * * the court should take all precautions to assure that defendant is aware of what he is doing” (People v Bellis, 78 AD2d 1014; see, also, People v Sadness, 300 NY 69, cert den 338 US 952).
In this case the plea court addresséd no inquiry to the defendant personally relating to the plea. Nothing assured the plea court that the defendant was pleading knowingly or voluntarily. Indeed, the plea court had information from the CPL article 730 examination report that defendant’s view of this case was “rigid and unrealistic.”
The courts of other jurisdictions appear to be divided as to the effect of the failure to advise defendant of his “Boykin rights” (Boykin v Alabama, 395 US 238; for discussion of the differing views and a list of the differing cases see State v Ballard, 66 Ohio St 2d 473). In New York, the issue seems to be unresolved. In People ex rel. Woodruff v Mancusi (41 AD2d 12, opp dsmd 34 NY2d 951), the Appellate Division, Fourth Department, found that the plea was knowingly and voluntarily made even though the “Boykin rights” were not given. In People v Pruitt (83 AD2d 872), the Appellate Division, Second Department, found that the failure to advise defendant of two of his Boykin rights *806 precluded the use of that conviction for enhanced purposes under the second felony offender statute. Although the Pruitt decision was recalled on December 1, 1980 and the decision vacated on the grounds that the appeal was academic since the sentence had already been served, nonetheless, the rationale of the Pruitt decision, this court believes, is not affected thereby (see, e.g., Matter of District Attorney of Kings County v Angelo G., 48 AD2d 576, opp dsmd and remitted to App Div 38 NY2d 923, upon remittitur opp dsmd 51 AD2d 1040).
The court need not decide the effect of the failure to advise this defendant of his “Boykin rights”. As stated in People v Brown (67 AD2d 949, 950), “The * * * plea minutes reveal that defendant’s knowledge of the consequences of and alternatives to the plea were not sufficiently explored by the trial court”. In this case the plea Judge did nothing to insure that defendant understood the consequences or alternatives to the plea.
As was pointed out in Argersinger v Hamlin (407 US 25, 34), “the volume of misdemeanor cases * * * may create an obsession for speedy dispositions, regardless of the fairness of the result.” Here, in one of the busiest courts in New York State, a plea was hastily taken from a defendant who, the court had reason to believe, was incapable of providing proper assistance to his counsel and who had a rigid and unrealistic view of the offense. Inquiry into the voluntariness of the plea was mandated.
This court found that the taking of the plea on November 5, 1980, violated defendant’s due process rights and therefore could not be used on trial in this case.
LEGISLATIVE RECOMMENDATIONS
(1) The Legislature should specifically authorize amendment of a special information.
(2) The special information should be filed within a specific number of days after defendant’s arraignment on the indictment.
(3) The arraignment on a special information should occur when the special information is filed or within a reasonable time thereafter.
*807 (4) A system for attacking the constitutional validity of the underlying crimes should be formulated.
(5) A time limitation for making challenges to the constitutionality of the underlying prior conviction should be set forth.
(6) The burden of showing the constitutionality or unconstitutionality of the prior conviction should be set forth by statute.

 It is difficult to tell what effect the Baldosar decision might have had on the Cornish decision.