OPINION OF THE COURT
Fuchsberg, J.
Once again we address the troublesome question of the circumstances in which the presence of counsel who has entered a criminal case may be waived by a defendant in the absence of counsel. The issue arises anew in the context of a charge of “unlawful possession of marihuana”, an offense whose initial violation, classified neither as felony nor as misdemeanor, is “punishable only by a fine of not more than one hundred dollars”.[1] We hold such a waiver may be effected, but only in the presence of a neutral magistrate who gives the defendant appropriate warnings of the risks of such a course.
*113 The defendant, Bryant K. O. White, a young community aide worker in the City of Geneva, was taken into custody on an information after police officers found an unsmoked marihuana cigarette and the burnt butt ends of two others in his car. When the Geneva City Court Judge to whose home the police had transported him for arraignment was not available, the defendant was lodged in the city jail at the police station house. From there, the defendant telephoned the director of the Geneva Human Rights Commission and requested her to find counsel for him. This she promptly did in the person of a Geneva lawyer, David Lee Foster. Foster did not delay in responding. First he telephoned the station house, where an arresting officer, William G. Hastings, advised him of the nature of the charge. Next, he visited the jail where, after interviewing the defendant, he was formally retained. Moreover, when he left the jail, he took the precaution of leaving the desk sergeant with particular information as to where he could be readily reached.
Shortly thereafter, defendant was taken back to the Judge’s home for arraignment. It is not disputed that, despite the People’s knowledge of Foster’s whereabouts, he was not notified of this event. Not surprisingly, he did not attend. Perhaps because he was not present and surely because the proceedings were not recorded, recollections of what transpired thereat were not free from doubt.
For the balance of the facts relevant to this appeal we therefore must look to the findings of the County Court, which, since it was to pass on an appeal from “a local criminal court in a case in which the underlying proceedings were not recorded by a court stenographer”, appropriately relied partly on the defendant’s “affidavit of errors” and the City Court Judge’s “return” (CPL 460.10, subd 3, pars [a], [d])[2] and, in other respects, on two statements by Officer Hastings, one in the form of a police report offered by the District Attorney and the other by way of a tran *114 script of the officer’s testimony at a vocational disciplinary proceeding which defendant faced soon after his arrest. For our part, we are bound by a County Court’s factual findings when these find support in the record, as they do in this case (Cohen and Karger, Powers of the New York Court of Appeals, § 198).
From this .reconstruction, we then must take it as established that, though Officer Hastings told the City Court Judge that Foster had entered the case, neither the Judge nor the defendant alluded to that fact in the arraignment colloquy.[3] Rather, to quote from the County Court’s decision, when the Judge “advised the defendant of his rights, including the right to an attorney at all stages of the proceeding and the right to an attorney to assist him on the charge and that he had a right to a trial”, the defendant rejoined that “he could not understand how he could be guilty of the charge” when it only involved the two butts. The County Court decision then goes on to relate how the arraigning Judge informed the defendant that the possession of any amount of marihuana was unlawful, explained that he could not be sent to jail for a first offense and offered him “an adjournment to get an attorney, or a trial”. The decision continues that defendant’s reply was that “he wanted to get rid of it”. After all this, “the Court asked if the plea was freely and voluntarily made” and “the defendant answered that it was”, and judgment was entered, all within the four-hour span which followed the search and arrest which had initiated the events of that evening.
On this factual base, the County Court affirmed the conviction, reasoning in the process that, while “a defendant’s right to counsel can be waived only in the presence *115 of counsel once counsel has been retained, no court has yet applied the rule to an arraignment”. On the present appeal, here by leave of a Judge of this court acting under CPL 460.20, defendant’s position, inter alia, is that the City Court proceeding contravened the defendant’s constitutional right to counsel. For the reasons which follow, reversal is in order.
Our analysis may well begin with the general observation that this State has long been a protector of an accused’s right to be heard through counsel and, if need be, to have such counsel assigned at public expense (see, e.g., People ex rel. Burgess v Risley, 66 How Prac 67; People v Donovan, 13 NY2d 148; People v Hobson, 39 NY2d 479; People v Rogers, 48 NY2d 167; People v Samuels, 49 NY2d 218; People v Bartolomeo, 53 NY2d 225).
These and other cases in the same line have been true to the spirit as well as the letter of our State Constitution’s provision that “[i]n any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions” (NY Const, art I, § 6). Sensitive that other constitutional rights, such as the privilege against self incrimination and the guarantee of due process, are not self-executing, they have recognized that the right to counsel “looks to their vitality as well” (People v Garofolo, 46 NY2d 592, 599; People v Cunningham, 49 NY2d 203, 207). In the end, the aim, of course, is that a particular defendant’s guilt or innocence depend on the merits and not alone on his or her articulateness, poise, intelligence, education, experience, maturity, legal sophistication or other personal qualities, or on the lack of one or more of these, as is too often true of a defendant who insists on representing himself (cf. Powell v Alabama, 287 US 45, 68-69).
However, it also must be noted that, mainly on the rationale that all unlawful acts are not of like gravity, our State and Federal courts have held that this right may be circumscribed in cases of lesser import. Ready illustration is found in the United States Supreme Court’s delineation of the scope of the Sixth Amendment’s prescription that an “accused shall enjoy the right * * * to have the Assistance of Counsel for his defense”, a mandate applicable to the *116 States through the Fourteenth Amendment (Gideon v Wainwright, 372 US 335, 342). In a series of cases commencing with Argersinger v Hamlin (407 US 25) and running through Scott v Illinois (440 US 367) and Baldasar v Illinois (446 US 222), the court rejected the postulate that the constitutionality of an uncounseled conviction turns on the severity of the punishment or on whether the offense is classified as felony, misdemeanor or petty crime. Instead, the court has subscribed to the result-oriented proposition “that no indigent criminal defendant may be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel” (Scott v Illinois, supra, at p 374).[4]
New York, following a somewhat parallel course under its own Constitution, similarly has drawn the line at deprivation of liberty (People v Farinaro, 36 NY2d 283, 285 [traffic infractions for which a “defendant no longer faces the possibility of imprisonment”]). And, as Chief Judge Desmond, in a dissent in which he was joined by then Judge Fuld, presciently put it more than a decade earlier, “[w]e express no new idea when we urge that, where imprisonment threatens, constitutional guarantees as to counsel must apply to ‘non-serious’ as well as ‘serious’ offenses” (People v Letterio, 16 NY2d 307, 316).
Thus, under prevailing constitutional case law, irrespective of whether the governing standard, as in Scott, is keyed to the actual imposition of imprisonment or, as suggested by the quotations from our cases, to a broader test triggered by the mere possibility of imprisonment (see, also, ABA Standards for Criminal Justice, Providing Defense Services, § 4.1 [adopted draft, 1968] [“types of offenses for which incarceration as a punishment is a practical possibility”]), plaintiff’s case falls within the limitation. For, standing alone, the charge against him neither could nor did eventuate in his incarceration.
*117 Nevertheless, section 221.05 of the Penal Law also provides that one who repeats such an offense a second time within three years after the commission of the original one is subject to the alternative punishment of imprisonment. Conceivably then, it could be argued that defendant’s plea here exposed him, however contingently, to the possibility of future loss of liberty. But this risk was eliminated by Baldasar, for there the court, in amplification of Scott, declared that an uncounseled plea for which an offender is not incarcerated may not be used to elevate a subsequent offense from one for which imprisonment is not available to one for which it is (Baldasar v Illinois, supra, at pp 222, 224, 226).
But, while the defendant in the case before us now therefore could not demand that counsel be assigned to him, this did not mean he was not free to retain one on his own. Indeed, there is nothing to indicate he did not have the means to do so, and, as we know, he in fact so advantaged himself promptly. Which brings us to the crucial questions: Absent the presence of the counsel whom he had engaged to represent him, was it error for the court to have allowed the defendant to proceed pro set If error it were, under what conditions would it have been permissible?
Essentially because of the same qualitative considerations which would have sanctioned denial of assignment of counsel, we now hold that it was within the power of the court to grant permission to th.e defendant to forego the presence of his retained counsel, but only if the court had first undertaken a sufficiently searching inquiry for it to be reasonably assured that the defendant appreciated the “dangers and disadvantages” of giving up the fundamental right to counsel (Faretta v California, 422 US 806, 835; see People v Medina, 44 NY2d 199, 210; People v Gina M. M., 40 NY2d 595, 597; People v Seaton, 19 NY2d 404,406-407).
In so deciding, we do not retreat from our repeated pronouncements, as State constitutional law, that “[o]nce an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel” (People v Rogers, 48 NY2d 167, 170-171, supra; People v Hobson, 39 *118 NY2d 479, 483, supra; each quoting from People v Arthur, 22 NY2d 325, 329; People v Cunningham, 49 NY2d 203, 207, supra). Instead, in the context of the multitude of lesser cases in which prison is not in the offing and in which the defendant may wish to dispense with counsel, we acknowledge that the neutral magistrate is a practical and suitable agency for bringing the risk of unwise and uninformed waivers of counsel home to such defendants. After all, the judicial function, divorced by the separation of powers principle from the police and prosecutorial activities of the State,[5] stands above and beyond the adversarial fray. Surely, this nonpartisanship does not interdict or inhibit employment of a Judge’s understanding of the pragmatics of adversarial litigation to meet this responsibility.
Moreover, the efficacy of the rule we fashion does not rely on its conceptualization alone. Such a waiver of counsel is not to be handled as though it were a routine, rubberstampable formality (cf. Adams v United States ex rel. McCann, 317 US 269, 279), for “a right too easily waived is no right at all” (People v Hobson, supra, at p 484). Consistent with the obligation we heretofore have enjoined on jurists before defendants in criminal cases may undertake their own defense, the Judge must see to it that the waiver is “knowing and intelligent” (People v McIntyre, 36 NY2d 10, 17; cf. United States v Mohabir, 624 F2d 1140 [Feinberg, Ch. J.]). It follows that a defendant’s silence will produce no presumption of waiver (cf. Carnley v Cochran, 369 US 506, 515). Nor will the simple statement of a desire to abandon the services of a lawyer, whether assigned or retained, suffice (cf. Von Moltke v Gillies, 332 US 708, 724; Matter of Lawrence S., 29 NY2d 206, 208).
So measured, the precautionary inquiry pursued by the Trial Judge in the present case was woefully inadequate. For instance, he did not utter a word, much less explain, the objectivity or professionalism counsel could supply; his bare statement that the defendant had a right to counsel was no substitute. Nor, for practical purposes, did his *119 summary and unprobing question as to whether the plea was “freely and voluntarily made” add anything. Though aware of the defendant’s public position, the Judge drew no attention to the possibility of collateral consequences affecting his employment. If anything, in light of the defendant’s expressed anxiety, judicial assurance that conviction could entail only a relatively modest fine actually encouraged the uncounseled posthaste plea.
For all these reasons, the order of the County Court should be reversed, the plea vacated and the case remitted to the City Court of the City of Geneva for further proceedings on the complaint. In so deciding, we do not reach the defendant’s other points, including his attack on the warrant under which his car was searched, since these were not preserved for our review (CPL 470.05, subd 2).

. In defining this offense as “unlawful” rather than “criminal”, section 221.05 of the Penal Law applies the decriminalization import of the so-called Marihuana Reform Act to possession of 25 grams (approximately seven eighths of an ounce) ,(L 1977, ch 360). Concordantly, because one charged under this section is not to be fingerprinted or photographed (see CPL 160.10), a conviction is not automatically recorded with the Division of Criminal Justice Services, the State’s central repository of criminal records (see Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 221.05, p 98). In contradistinction, other parts of the over-all statutory scheme separately provide for five degrees of “criminal possession”, some denominated misdemeanors and others felonies (Penal Law, §§ 221.05, 221.10, 221.15, 221.20, 221.25, 221.30).

. The “return”, provided for in CPL 460.10 (subd 3, par [d]), “must set forth or summarize evidence, facts or occurrences in or adduced at the proceedings resulting in the judgment, sentence or order, which constitute the factual foundation for the contentions alleged in the affidavit of errors”.

. The County Court’s decision makes no mention of the fact that the City Court Judge’s return omits any reference to Officer Hasting’s advice that Foster was in the case. Nevertheless, from its recital of Hasting’s testimony and Foster’s statement at argument, each certifying to the latter’s prearraignment retention, as well as from the County Court’s acceptance of this circumstance as the premise for its decision, we must assume the County Court found as a fact that Foster indeed had entered the case. Most conclusively, the record reveals that, on argument before the County Court, the District Attorney conceded that Foster was in the case before the arraignment (“There is no contention by the people that Mr. Foster did not show up at the precinct house, to the best of my knowledge he did, but Mr. White was taken to [the Judge’s! house”).

. “ ‘Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts’ ” (Scott v Illinois, supra, at p 369, quoting Argersinger v Hamlin, supra, at p 40).

. “The Constitution does not contemplate that prisoners shall be dependent upon government agents for legal counsel and aid, however conscientious and able those agents may be” (Von Moltke v Gillies, 332 US 708, 725).