OPINION OF THE COURT
Jeffrey M. Atlas, J.
The defendant has made a pretrial motion to “controvert” a special information which accompanies an indictment charging him with operating a vehicle while under the influence of alcohol or drugs as a felony.[1] The special information, filed to comply with CPL 200.60, alleges that the defendant was convicted of the same offense as a misdemeanor on July 16, 1980, in the Criminal Court of the City of New York, Bronx County.
The defendant admits that as a consequence of his plea of guilty he was convicted of the misdemeanor in 1980, but contends that the plea was unconstitutionally obtained because it was unintelligently and involuntarily entered. In this respect the defendant has shown that the court taking his plea failed, among other things, to ascertain *191 whether the defendant knew of his rights to remain silent, confront witnesses and be tried in the matter and whether the defendant voluntarily waived those rights. (See Boykin v Alabama, 395 US 238.) Given that, the defendant further contends that his earlier misdemeanor conviction cannot properly serve now as a predicate for prosecution of the instant offense as a felony and that the grade of the crime, from misdemeanor to felony, and the possible sentence, as a felon up to a maximum of IVs to 4 years, may not be enhanced upon the strength of that misdemeanor conviction. Based upon all of that, the defendant asks me to prevent the prosecution from proving the allegations of the special information.
Unconcerned that the CPL provides no process for the particular relief sought, the defendant relies upon the decisions in People v Dorn (105 Misc 2d 244); People v Sirianni (109 Misc 2d 781, revd on other grounds 89 AD2d 775); and People v Solomon (113 Misc 2d 790), each of which holds that a misdemeanor conviction, used as a predicate for enhancement of a second offense to a felony, may be collaterally challenged at the time of the filing of the special information and in the very court in which it was filed.
My analysis of the problem constrains me to disagree with those decisions, first, because each of those decisions intuitively fashions a new remedy without regard for the remedy long ago made available by our appellate courts in such proceedings, and, second, because each decision purports to follow Baldasar v Illinois (446 US 222) which, I find, is not at all supportive of their view.
We must start with an acknowledgment of the principle that a judgment of conviction entered by a court having jurisdiction of the accused and the cause and not set aside upon direct or collateral appeal is, for all purposes, presumed to be valid. (See People v Bell, 36 AD2d 406, affd 29 NY2d 882; People v Richetti, 302 NY 290; Matter of Morhous v New York Supreme Ct., 293 NY 131.)
Notwithstanding that, it is certainly well established that while such a judgment may have fallen beyond appellate review as to issues to be found within the underlying record, under certain circumstances, the same judgment *192 may be subject to collateral attack, at least with respect to matters not within the record. (See, e.g., CPL 440.10; People v Shapiro, 3 NY2d 203.) This is particularly true with respect to claims affecting the constitutionality of the conviction in question. In this respect, our courts had long ago noticed that, since infirmities of a constitutional dimension not appearing in the record could not be asserted on appeal, absent a collateral avenue of relief, these claims would be foreclosed. (See People v Shapiro, supra.) Yet, due process of law has always demanded that some procedure give voice to claims of infirmity that may affect the fundamental fairness of the judgment and overcome any presumption of validity it has. (See People v Sullivan, 3 NY2d 196; Matter of Morhous v New York Supreme Ct., supra; Matter of Lyons v Goldstein, 290 NY 19.)
The urgent demands of due process have always been especially compelling when a previously unchallenged judgment is claimed to lack of constitutional validity and that assertion is made at the very time that the judgment is sought to be used to enhance the sentence of one newly convicted of another crime. (See Burgett v Texas, 389 US 109.)
We are all now acutely aware, with respect to the use of such judgments to enhance the penalty of second and persistent felony offenders, that the demands of due process are more than adequately met by sections of our CPL which allow the litigation of such constitutional claims at a hearing prior to .sentence. (See CPL 400.20, 400.21.)
The issue in this case is framed by the fact that neither those sections of the law nor any other section of our CPL provide any avenue by which this collateral attack on the constitutionality of an earlier misdemeanor judgment may be made before the sentencing court to prevent the use of the earlier conviction in either enhancing the grade of the offense or the sentence.
Indeed, defendant asks that I now fashion a remedy, similar to that provided by the predicate felony sentencing statutes, by which he may, in this court, raise and litigate a constitutional challenge to the earlier misdemeanor conviction. It is clear that the defendant supposes that I have the power to create such a remedy in order that there be no *193 failure of due process such as was avoided by the sections governing felonies.
I will not here dispute whether I may now create such a procedure to give effect to defendant’s claims, for, it is clear, an historic remedy already exists by which the defendant may adequately assert his claims.
In this respect, I must note that were there no statutory procedure as now exists with respect to predicate felony sentencing, that enhancement scheme would not only be remarkably similar to the one presented here but, it too would not suffer for want of due process.
This becomes clear when one considers that the statutory provisions for challenge to predicate felonies did not result from some intuitive leap of the Legislature but, rather, evolved from an earlier body of law which had already provided a common-law basis for such a collateral challenge.
In fact, CPL 400.20, and its companion, CPL 400.21, are derived from section 470-a of the Code of Criminal Procedure of 1881 (as added by L 1967, ch 681, § 60) which, in turn, was derived in essential part, from section 1943 of the Penal Law of 1909, passed in 1964 to codify, for the first time, a procedure to challenge the constitutionality of predicate felony convictions obtained against a defendant in New York or in other jurisdictions. Until 1964, the procedure in such matters was that discovered and directed by our courts. In Matter of Lyons v Goldstein (supra) it was first held that an unappealed conviction, no longer subject to attack under any statute but, sought to be used as the predicate for an enhanced felony sentence, might be subject to collateral attack, made upon the ground that the judgment was obtained by fraud or misrepresentation, through the use of writ of error coram nobis. While it was there contended that the Court of General Sessions was without the statutory power to inquire into and set aside its own judgment of conviction, the Court of Appeals, nonetheless, concluded that to deny an accused the opportunity to establish that he had been defrauded or coerced into pleading guilty to a crime would impair an important constitutional right (Matter of Lyons v Goldstein, supra, at p 25). The Court of Appeals thereafter confirmed the use of *194 coram nobis as an appropriate device to challenge the validity of past but unappealed judgments, and extended its use to review an assertion that the prosecution procured the judgment upon perjured testimony (Matter of Morhous v New York Supreme Ct., supra) and to the claim that the judgment was procured by depriving the defendant of the right to counsel (Matter of Hogan v Court of Gen. Sessions, 296 NY 1).
Ultimately coram nobis was seen as the single device by which one, charged as a multiple offender, might collaterally attack an earlier conviction by bringing before the court facts unknown at the time of the judgment, and facts which affected the validity and regularity of the judgment itself and which, if known,- would have precluded the judgment rendered. (See People v Sullivan, supra, concurrence of Fuld, J., at p 199.) Clearly, collateral attack upon the judgment by coram nobis was allowed, as an emergency measure, to preserve due process where the accused could find no remedy available in an appropriate proceeding of a court of competent jurisdiction. The corollary, of course, is that due process is denied in such a circumstance only where the accused can find no other appropriate remedy to redress the earlier wrong (Matter of Morhous v New York Supreme Ct., supra, pp 134-135; People v Sullivan, supra). Finally, while coram nobis existed as a means of emergency relief, it could be entertained only in the court which entered the complained of judgment (Matter of Hogan v Court of Gen. Sessions, 296 NY 1, supra). As to the latter principle, it had been noted that an accused’s challenge to a prior conviction could best be weighed by the court which convicted him, for that is. the court most knowledgeable of the circumstances attending the conviction and the one which can best appreciate the record before it (see People ex rel. Harrison v Jackson, 298 NY 219, concurrence by Fuld, J., at p 225). Indeed, this last notion, grounded in the history of the writ, ultimately proved the most problematic. A defendant, alleged to be a multiple felony offender predicated upon a felony conviction obtained against him in another State, was precluded from any collateral attack upon that predicate conviction in this State, for this was not the forum in which the judgment was entered. (See *195 People v McCullough, 300 NY 107.) In fact, habeas corpus was not considered the appropriate remedy and, upon such collateral attack, it had been held that coram nobis existed as the only appropriate remedy. (See People ex rel. Sedlak v Foster, 299 NY 291.) Notwithstanding the expressed disapproval of New York’s practice of foreclosing avenues of redress for alleged constitutional infirmities underlying judgments of other courts (see United States v LaVallee, 306 F2d 417), the Court of Appeals continued to maintain the historic character of the writ by requiring that it be entertained only in the court which rendered the earlier judgment. (People v Wilson, 13 NY2d 277.) Despite this position, the burdens of maintaining a fair practice dictated change that could best, if not only, be accomplished by the Legislature. (See People v Wilson, supra, concurrence by Fuld, J.,. at p 281; United States v LaVallee, supra.) In response, the Legislature, in 1964, passed section 1943 of the Penal Law (supra), codifying and streamlining the methods by which collateral constitutional attacks might be brought to “predicate” convictions entered here or in other States.
Significantly the Legislature did nothing at that time or upon passage of the CPL in 1971 to establish a procedure for the challenge of predicate misdemeanors in situations such as the one at hand, even though the Legislature was fully aware of the existence of those penal provisions which enhanced both the grade of the offense and punishment on the strength of a previous misdemeanor conviction (e.g., Penal Law of 1909, §§ 408 [burglar’s instruments], 1897 [firearms]; Vehicle and Traffic Law, § 1192 [operating motor vehicle or motorcycle while in an intoxicated condition or while ability to operate is impaired by the consumption of alcohol]). One is compelled to conclude that it was understood that in these cases only coram nobis could serve to raise constitutional claims as to the predicate conviction.
While it may appear to our Legislature in the future to be more efficient to provide a defendant with a procedural device to question the constitutionality of a predicate misdemeanor conviction at this stage of a matter, it is simply not an appropriate exercise of this court’s power to create *196 such a remedy where there exists an avenue of redress for the wrong claimed and by which the defendant may have his due process demands completely satisfied. (See Matter of Morhous v New York Supreme Ct., supra.) Since the defendant is bound to pursue his claims by way of writ of error coram nobis he must, when he is willing and able, bring his arguments to the forum provided by CPL 440.10, the section by which the writ is now codified.[2]
Finally, I must deal with defendant’s contention that Baldasar v Illinois (446 US 222, supra), especially as it is adopted by the courts in Dorn (105 Misc 2d 244, supra), Sirianni (109 Misc 2d 781, supra), and Solomon (113 Misc 2d 790, supra), establishes the defendant’s right to the relief he now seeks.
In Baldasar v Illinois (supra), the indigent petitioner was convicted of a misdemeanor, obtained without the assistance of appointed counsel, but, was punished only by a fine and a probation sentence. Thereafter, the misdemeanor conviction was used as the predicate for the prosecution and conviction of petitioner’s second offense, as a felony. The felony conviction actually resulted in an enhanced sentence of one to three years in prison: In its decision, the Baldasar court first reconfirmed the principle of its earlier decisions in Argersinger v Hamlin (407 US 25) and Scott v Illinois (440 US 367), that an uncounseled misdemeanor conviction is constitutionally valid if it does not actually result in incarceration of the offender. Upon the record before it, that court concluded, however, that such an apparently valid uncounseled misdemeanor conviction could not have been used to convert a newly committed misdemeanor into a felony which actually resulted in an enhanced sentence. Clearly, the majority of the court could not escape the conclusion that the enhanced felony sentence of the accused was attributable in some measure to his earlier uncounseled misdemeanor conviction. That conviction, Justice Marshall noted, was invalid under *197 Scott v Illinois (supra) for the purpose of depriving petitioner of his liberty, whether in the first proceeding or in the second.
It is clear, therefore, that the assumption made by the courts in Dorn (supra), Sirianni (supra), and Solomon (supra) that a presumptively valid uncounseled but unpunished misdemeanor conviction becomes unconstitutional and invalid if it simply enhances the grade of an offense and thereby increases the possible punishment for the offense, is not a safe one.
Moreover, these courts fashion a remedy which they believe is needed to prevent the prosecution from immediately proceeding further upon the earlier questioned misdemeanor. In this, too, they purport to rely upon Baldasar (supra) and conclude that what that decision prohibits is not only enhancement of sentence upon the earlier questioned misdemeanor, but enhancement of the grade of the offense from misdemeanor to felony.
In fact, Baldasar (supra) states only that an enhanced prison term, actually imposed, will serve to resurrect a constitutional defect present in such an earlier misdemeanor conviction. (See People v White, 56 NY2d 110.) At no point does Baldasar (supra) suggest that the prosecution for a felony may not proceed predicated upon an unappealed and presumptively valid misdemeanor conviction. Implicit in the notion that constitutionality of the earlier conviction is measured by the resulting sentence is the assumption that prior to that sentence, the earlier misdemeanor stands valid for all other purposes.
Indeed both Argersinger v Hamlin (supra) and Scott v Illinois (supra) make explicit the court’s concern that deprivation of liberty be the bright line by which we may recognize, in misdemeanor cases, the difference between those Sixth Amendment deprivations which cry out for remedy, and those which do not. In my view, that approach does not suggest a new movement in the court but, rather, the resurrection of a standard established long ago. (See, e.g., Chambers v Florida, 309 US 227.) It may reasonably be argued that change in the grade of the offense cannot automatically be equated with deprivation of life or liberty which, it is certain, cannot be denied without due process of *198 law. It reasonably follows from such a premise that enhancement of the status of an offense from misdemeanor to felony may take place upon a questioned uncounseled misdemeanor conviction so long as that questioned conviction does not also serve to deprive the accused of liberty.
I cannot fail to recognize, however, that Baldasar (supra) may not ultimately survive careful comparison of its approach with the demands of our State Constitution or State law concerning the right to counsel. (See People v White, supra.) Nor may it necessarily be read to suggest that its particular approach to the limits of the Sixth Amendment in misdemeanor cases ought to be employed in testing a claim that in the taking of a plea, due process was wanting under Boykin v Alabama (395 US 238, supra).
Whatever may be the future of these principles in the evolution of the law of this State, certainly they do not suggest, as the courts in Dorn (supra), Sirianni (supra), and Solomon (supra) believe they do, that a constitutional attack upon the initial misdemeanor might exist merely by virtue of its potential for harm to the defendant. More importantly, in the context of this proceeding, Baldasar (supra) does not justify the creation of an emergency remedy to challenge the earlier misdemeanor in this court at this stage of the proceeding.
The motion is denied.

. Subdivision 5 of section 1192 of the Vehicle and Traffic Law: “A person who operates a vehicle in violation of subdivisions two or three of this section after having been convicted of a violation of subdivisions two or three of this section, or of driving while intoxicated, within the preceding ten years, shall be guilty of a felony”.

. In my view, in these days, the defendant is ultimately benefited more by the effort to entirely void the conviction than by one which, leaving the earlier judgment valid for many purposes, seeks only the declaration that the earlier conviction will not be relied upon to enhance penalty. In this respect the reference by the People to Lewis v United States (445 US 55) amply demonstrates that, notwithstanding claims of constitutional defect, a defendant may well be disabled by the mere existence against him of such an earlier conviction.