OPINION OF THE COURT
Christopher J. McCarthy, J.
Claimant, Dr. Israel Romero, alleges that defendant was negligent in failing to properly supervise the Division of State Police (the State Police or the Division) and that the State Police sent a false report to the Federal Bureau of Investigation (FBI). A bifurcated trial, addressing liability issues only, was held on April 5, 2011 at the Court of Claims in Albany, New York. Claimant and State Police Captain Laurie Wagner were the only witnesses. Thereafter, the parties requested and were granted additional time to submit post-trial memoranda.[1] Upon consideration of all the evidence, including a review of the exhibits and listening to the witnesses testify and observing their demeanor as they did so, the court finds that claimant failed to establish his claim by a preponderance of the credible evidence.
Facts
Claimant holds several graduate level academic degrees.[2] In 2008, he applied for an educator’s license in South Carolina. Dr. Romero asserts in his claim that the FBI generated a report to *601 the South Carolina Department of Education as part of a background check conducted in connection with that application. Claimant also asserts that the report indicated that he had been convicted of two misdemeanors in New York State. He further asserts that the conviction report was based upon information provided to the FBI by the State Police concerning his arrest on July 14, 1995. Dr. Romero notes that the conviction later was reversed by the New York State Court of Appeals on July 1, 1998, and the indictment against him was dismissed (see People v Romero, 91 NY2d 750 [1998]), whereupon the record was closed and sealed by order of Schenectady County Court pursuant to CPL 160.50 (see exhibit 3). Thus, claimant contends the State Police improperly furnished that information to the FBI.
At trial, Dr. Romero testified that the South Carolina Department of Education’s Office of Educator Certification informed him that the FBI reported that he had a criminal record. Dr. Romero also said that the FBI provided him with a copy of its 2008 criminal history record, which included information pertaining to his July 14, 1995 arrest and conviction. He further stated that his application for an educator’s license was not granted and that he was not chosen for a position with the Greenville County, South Carolina school district (see exhibit 8). Claimant said that he was employed as a licensed educator in Massachusetts during the period from 2001 through 2007, and stated that he was required to have a clean criminal record in order to hold that position.
Captain Wagner testified that she has been in charge of the State Police central records bureau for the past 14 years and also is the Division’s records access officer. She stated that State Police records associated with claimant’s July 14, 1995 arrest were purged in accordance with the Division’s records retention policy (see exhibits 1, 2).
Captain Wagner further stated that Dr. Romero’s records were not destroyed in response to Schenectady County Court’s seal order (see exhibit 3). In fact, she noted that her office is not necessarily notified about the disposition of criminal cases. Captain Wagner said that, when the State Police receives a notice of sealing from a court, all pertinent records are collected from the various troop barracks around the state and placed in a sealed room at the Division’s central records office. Captain Wagner conducted a review of the Division’s records and determined that the State Police did not receive a notice of sealing in connection with claimant’s arrest.
*602 In her letters to Dr. Romero, Captain Wagner noted that the State Police do not maintain or update court disposition records. Likewise, she said the Division is not the repository of criminal history records, which are maintained, instead, by the New York State Division of Criminal Justice Services (DCJS) (see exhibits 1, 2). She also suggested in one of her letters that claimant contact Schenectady City (sic) Court and DCJS directly for any records they might possess (see exhibit 2).
Law and Discussion
When the State engages in proprietary activities (endeavors akin to those ordinarily performed by private enterprises) it is subject to ordinary tort liability (see Sebastian v State of New York, 93 NY2d 790, 793 [1999]; Metz v State of New York, 27 Misc 3d 1209[A], 2010 NY Slip Op 50635[U] [Ct Cl 2010]).
The sealing of records of a criminal proceeding that terminates in favor of the accused, on the other hand, is a quintessential^ governmental function. The clerk of the court is directed to seal such records and also to notify DCJS and all other appropriate police departments, law enforcement agencies, and prosecutors’ offices, which, in turn, also are directed to seal all their “official records and papers” concerning the matter (CPL 160.50 [1] [c]). Thus, every actor subject to the statute’s charge is a governmental entity dealing with their official records.
The State’s potential liability in such cases depends upon whether or not the governmental action being performed is discretionary or ministerial in nature (Signature Health Ctr., LLC v State of New York, 28 Misc 3d 543, 556 [Ct Cl 2010]). Discretionary acts involve the “exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result” (Tango v Tulevech, 61 NY2d 34, 41 [1983]). Discretionary governmental acts “may never be a basis for liability, while ministerial [governmental] acts may support liability only where a special duty is found . . . [that is] owed to the [claimant], apart from any duty to the public in general” (McLean v City of New York, 12 NY3d 194, 202-203 [2009]; see Lauer v City of New York, 95 NY2d 95, 99-100 [2000]).
The purpose of CPL 160.50’s record sealing provision is to “protect accused individuals from the unauthorized use of their records” (Green v Montgomery, 95 NY2d, 693, 701 [2001]) and “to remove any ‘stigma’ flowing from an accusation of criminal *603 conduct terminated in favor of the accused” (People v Patterson, 78 NY2d 711, 716 [1991]; see People v McGurk, 229 AD2d 895, 896 [3d Dept 1996]). In order to “effectuate this purpose, CPL 160.50 employs language that is mandatory” (Matter of Joseph M. [New York City Bd. of Educ.], 82 NY2d 128, 132 [1993] [emphasis supplied]). Thus, the statute envisions direct adherence to a governing rule or standard with a compulsory result that constitutes a ministerial act.
It is a claimant’s “heavy burden,” however, also to establish that a special relationship or duty exists when negligence is alleged concerning the performance of a ministerial act (Pelaez v Seide, 2 NY3d 186, 198-199, 199 n 8 [2004]; see Hajdari v State of New York, Ct Cl, Mar. 9, 2010, Scuccimarra, J., claim No. 117339, UID No. 2010-030-005 [a case involving a failure to keep confidential records confidential pursuant to CPL 160.55, a companion provision to CPL 160.50, governing convictions for certain petty offenses]). As a result of that heavy burden, the Court of Appeals has dismissed, as a matter of law, most' such claims that hinge upon the existence of a special relationship/ duty.
“A special relationship can be formed in three ways: (1) when the [governmental entity] violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the [governmental entity] assumes positive direction and control in the face of a known, blatant and dangerous safety violation.” (McLean v City of New York, 12 NY3d at 199, quoting Pelaez v Seide, 2 NY3d at 199-200 [citation omitted].)
In order to satisfy the “statutory duty” prong of the special relationship rule, the applicable statute must authorize a private right of action. While an express authorization is to be preferred, one may be fairly implied when:
“(1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent with the legislative scheme. If one of these prerequisites is lacking, the claim will fail.” (Pelaez v Seide, 2 NY3d at 200 [citation omitted]; see Signature Health Ctr., LLC v State of New York, 28 Misc 3d at 550.)
*604 The court concludes that claimant has met his heavy burden in this instance and that CPL 160.50 implicitly creates a private right of action. “Violation of a statute resulting in injury gives rise to a tort action only if the intent of the statute is to protect an individual against an invasion of a property or personal interest” (Lauer v City of New York, 95 NY2d at 101). As noted above, the purpose of the record sealing provision is to protect individuals against unauthorized disclosure of confidential records and any potential stigma that would result from their transmission.
Moreover, CPL 160.50 was enacted “as part of an over-all legislative package” that also included CPL 160.60 (termination of a criminal action in the accused’s favor “shall be deemed a nullity” that does not disqualify the accused from engaging in any lawful activity) and what is now Executive Law § 296 (16) (making it an unlawful discriminatory practice to inquire about, or to discriminate against the accused because of, such criminal proceedings) {People v Patterson, 78 NY2d at 715; People v Cruz, 1 Misc 3d 908[A], 2004 NY Slip Op 50004[U], *3 [Sup Ct, Bronx County 2004]). Thus, the Court of Appeals has stated that “the Legislature intended to provide a civil remedy for violation of the provisions of CPL 160.50” {People v Patterson, 78 NY2d at 716). If the Legislature intended to limit claimant’s civil remedy to an action pursuant to Executive Law § 296 (16), then “CPL 160.60 would have been unnecessary” {Matter of Brown v Passidomo, 127 Misc 2d 700, 705 [Sup Ct, Erie County 1985]). For that reason, a person whose conviction was terminated in his favor was not precluded from proceeding against a state agency (id.; see also Matter of Miller v Waters, 51 AD3d 113 [3d Dept 2008] [accused commenced proceeding by order to show cause seeking to find police chief in contempt for violating seal order, dismissed on other grounds]).
Thus, the court determines that claimant is a member of the class for whose particular benefit the statute was enacted. The court further finds that recognition of a private right of action would promote the legislative purpose of the governing statute, namely “to protect the rights of individuals against whom criminal charges have been brought, but which did not ultimately result in a conviction” (Governor’s Approval Mem, 1976 McKinney’s Session Laws of NY, at 2451). Finally, the court finds that to do so would be consistent with the legislative scheme.
Turning to the merits of Dr. Romero’s claim, to establish a prima facie case of negligence claimant must demonstrate by a *605 preponderance of the credible evidence that (1) defendant owed claimant a duty of care; (2) there was a breach of that duty; and (3) defendant’s breach of that duty was a substantial factor in the events that caused the injury suffered by claimant (see Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]; Pipp v Guthrie Clinic, Ltd., 80 AD3d 1014, 1015 [3d Dept 2011]; De Luke v City of Albany, 27 AD3d 925, 926 [3d Dept 2006]; Kampff v Ulster Sanitation, 280 AD2d 797, 797 [3d Dept 2001]; Patrick v State of New York, 11 Misc 3d 296, 320 [Ct Cl 2005]).
As the foregoing discussion notes, the State did owe claimant a special duty with respect to the sealed records relating to his overturned 1995 conviction. The court concludes, however, that Dr. Romero failed to establish by a preponderance of the credible evidence that defendant breached that duty, or that such breach, if any, was a substantial factor in the injuries he asserts.
Dr. Romero alleged, but did not prove, that the State Police breached the special duty owed to him by reporting his arrest and conviction to the FBI. The record does not establish that the State Police provided such information to the FBI. Rather, the record establishes only that the Division purged its records relating to those events in accordance with its records retention policy. In fact, Captain Wagner, whose testimony the court found to be both credible and creditworthy, stated that the Division never even received a seal order from the court (cf. Matter of Brown v Passidomo, 127 Misc 2d at 704 [state agency charged with notice of order that court did not send because a copy had been served]).
Moreover, the record is bereft of evidence that any other state agency reported such information including, most notably, DCJS, the agency charged with maintaining the State’s central repository of criminal records (see People v White, 56 NY2d 110, 112 n 1 [1982]; Bumbury v City of New York, 62 AD3d 621, 624-625 [1st Dept 2009]). It was for that very reason that Captain Wagner suggested that claimant contact DCJS directly and even provided both mail and Internet addresses for DCJS (see exhibit 2).
Likewise, claimant failed to establish that defendant’s breach of that duty was a substantial factor in the events that caused the injury alleged by claimant. There is nothing in the record beyond Dr. Romero’s assertions to establish why he was not granted the South Carolina license. The correspondence from the Greenville County schools simply states that he was not *606 selected after a thorough review of a large number of competitive applications (see exhibit 8 at 2). There is no mention of any information provided by the State Police to the FBI, as claimant alleges.
Accordingly, as claimant failed to establish by a preponderance of the credible evidence that defendant was negligent in connection with his claim, his ministerial negligence claim must fail and the claim is dismissed.
All motions and cross motions are denied as moot. All objections upon which the court reserved determination during trial are now overruled.

. At the conclusion of trial, the court directed that post-trial memoranda were to be submitted simultaneously and to be postmarked by no later than May 6, 2011. Reply memoranda also were to be submitted simultaneously and to be postmarked by no later than May 16, 2011. The affidavit of service annexed to defendant’s reply memorandum states that it was placed in the mail to claimant on May 17, 2011 and a copy was received by the court the same day. Thus, the court deems defendant’s reply memorandum to be untimely and, as such, it was not reviewed by the court.

. They include a Doctor of Philosophy, Juris Doctor, Master of Business Administration, and Master of Education (see exhibits 10-13). Although he is a law school graduate, Dr. Romero stated that he is not admitted to the New York State Bar (see also People v Romero, 91 NY2d 750, 752 [1998]).